UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **BYRON FRANCIS, JR.** | **CASE NO. 6:22-CV-06094** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **SHERIFF'S OFFICE LAFAYETTE PARISH** | **MAGISTRATE JUDGE WHITEHURST** |

## RULING

Before the Court is a Motion for Judgment on the Pleadings, or alternatively for Summary Judgment [ECF No. 15], filed by Defendant, Sheriff Mark Garber as Sheriff of the Lafayette Parish Sheriff's Office ("LPSO"). Plaintiff Byron Francis, Jr. opposes the motion.[1] For the reasons that follow, the motion is GRANTED IN PART.

## I.
### BACKGROUND

Byron Francis, Jr. brings this suit, alleging that on September 8, 2021, he and his girlfriend were pulled over by an LPSO employee for having illegally tinted windows.[2] Francis asserts that the officer asked for consent to search the vehicle, which was denied, and so a second officer with the canine unit was summoned.[3] Thereafter, officers found a small amount of marijuana in Francis's girlfriend's purse, whereupon they "began to arrest her, handcuffing her and treating her roughly."[4] Francis alleges that when he asked the officers why they were handling his girlfriend so roughly, the officers handcuffed him, threw him to the ground and began to beat him, "slamming his head into the pavement at least three times."[5] According to Francis, he then informed the

---

[1] ECF No. 23.
[2] ECF No. 1-1 at 4.
[3] *Id.*
[4] *Id.*
[5] *Id.* at 4-5.

officers that the marijuana was his, whereupon he was arrested and brought to jail.[6] Francis alleges that after he was jailed, "the officer who had arrived with the canine unit and another officer took him out of the [holding] cell, telling him that he had a visitor."[7] The officers then brought Francis (in handcuffs) to a different location, whereupon the officer with the canine unit "punched him in the gut," and the second officer "beat him with a nightstick."[8]

On October 20, 2021, Francis was charged with nine offenses arising out of this incident.[9]

On August 17, 2023, Francis pleaded *nolo contendere* to Count 5, which charged as follows:

> **COUNT 5**: in that Byron Francis Jr., on or about September 8, 2021, while in the Parish of Lafayette, did knowingly, intentionally and willfully use violence, force, extortionate threats or true threats upon Agent Cpl. Lam Bui, a public official with the Lafayette Parish Sheriff's Office, with the intent to influence the official's conduct in relation to the official's position, employment or duty; or in retaliation or retribution for actions taken by the elected official as part of the official's official duties, in violation of the provisions of La. R.S. 14:122 (Public Intimidation and Retaliation – Felony).[10]

The remaining eight counts were dismissed.[11]

On September 2, 2022, Francis filed suit in state court solely against the "Lafayette Parish Sheriff's Office," in its capacity as "a political body of the Parish of Lafayette."[12] Therein, Francis asserted the LPSO was vicariously liable for the negligent and intentionally tortious conduct committed by its officer-employees.[13] He additionally asserted that the LPSO was independently

---

[6] *Id.* at 5.
[7] *Id.*
[8] *Id.*
[9] ECF No. 15-6.
[10] *Id.* at 1; ECF No. 15-8 at 1.
[11] ECF No. 15-8 at 1. The dismissed charges were: possession with intent to distribute marijuana (Count 1), possession of marijuana while in a drug free zone (Count 2), resisting a police officer with force or violence (Count 3), self-mutilation by a prisoner (Count 4), public intimidation and retaliation against Deputy Sheriffs Alex Marks and Joshua Jones (Counts 6 and 7), attempted simple escape (Count 8), and possession of drug paraphernalia (Count 9). ECF No. 15-6 at 1-2.
[12] ECF No. 6 at 5.
[13] *Id.* at 6, ¶¶ 10-11.

liable for its failure to train, supervise and discipline its officers with respect to excessive use of force, and for adopting "[a]dopting official policies, practices, and customs that provided for the failure to properly train and supervise its officers."[14] On November 30, 2022, Sheriff Mark Garber, in his capacity as Sheriff of the LPSO, removed the suit to this Court on the basis of federal question jurisdiction.[15]

On December 1, 2022, Francis filed a Supplemental and Amended Petition, which added three fictitious defendants to this suit—Officers A, B and C.[16] The supplemental and amended pleading alleges it was Officer A who pulled Francis over for illegally tinted windows, Officer B was the officer assigned to the canine unit, and Officer C was the employee who beat Francis with a nightstick after he was arrested and jailed.[17] In addition to his previous causes of action, Francis added claims against the individual officers for their negligent and intentionally tortious conduct, and he added a claim against the officers for the violation of his "constitutional rights under the Fourth and Fourteenth Amendments of the U.S. Constitution to be secure in his person and free from the unreasonable use of excessive force."[18] Only the LPSO, through Sheriff Garber, has answered the suit.[19] Francis has not sought leave to amend the Complaint to properly name the individual officers Francis alleges are personally liable for the alleged conduct.[20] The LPSO now moves for judgment on the pleadings, or alternatively, for summary judgment, asserting "the undisputed material facts do not establish any basis of liability for this governmental defendant

---

[14] *Id.* at 6-7, ¶ 12.
[15] ECF No. 1.
[16] ECF No. 6 at 42.
[17] *Id.* at 42-43.
[18] *Id.* at 43-44, ¶¶ 12-13.
[19] ECF No. 7.
[20] It is unclear why Francis did not name the forgoing officers, as three officers involved in Francis's arrest were named in the Bill of Information issued on October 20, 2021, and four officers are identified in the affidavit of arrest created on September 8, 2021. ECF No. 15-6 at 2; ECF No. 26-2 at 1.

under either 42 U.S.C. § 1983 or state law."[21] The Court finds the pending motion is appropriately analyzed as a motion for judgment on the pleadings.[22]

## II.
## LEGAL STANDARD

The standard for a Rule 12(c) motion for judgment on the pleadings "is the same as that for dismissal for failure to state a claim under Rule 12(b)(6)."[23] To survive such a motion, the complaint must set forth sufficient factual allegations "to state a claim to relief that is plausible on its face."[24] The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[25] Although a complaint does not need detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[26] "A pleading that offers labels and conclusions or a formulaic recitation of the elements" will not suffice, nor will a complaint that merely tenders "naked assertions devoid of further factual enhancement."[27] When deciding such a motion, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."[28] However, this tenet does not apply to conclusory allegations, unwarranted deductions, or legal conclusions couched as factual allegations, as such assertions do not constitute

---

[21] ECF No. 15 at 1.
[22] The parties identify very few facts beyond those asserted in the pleadings, none of which would change the result of the ruling under Rule 12(c). *See e.g.* ECF Nos. 21-1 and 23-1.
[23] *Johnson v. Miller*, 98 F.4th 580, 583 (5th Cir. 2024) (quoting *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 439 (5th Cir. 2015)).
[24] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
[25] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Twombly* at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level," and not merely create "a suspicion [of] a legally cognizable right of action.") (quoting 5 Charles Alan Wright & Arthur Miller, FEDERAL PRACTICE AND PROCEDURE § 1216, pp. 235-36 (3d ed. 2004)).
[26] *Iqbal* at 678.
[27] *Id.* (internal quotation marks, alterations omitted) (quoting *Twombly* at 555, 557).
[28] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted); *see also Iqbal* at 679 ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.").

"well-pleaded facts."[29] The court generally "must limit itself to the contents of the pleadings, including attachments thereto."[30] One exception to this rule is that district courts "may permissibly refer to matters of public record."[31]

## III.
### ANALYSIS

**A.    Plaintiff's claim of municipal liability.**

LPSO argues Francis's complaint fails to "sufficiently establish any municipal liability," because: (1) vicarious liability will not support a municipal liability claim under Section 1983, and (2) Francis's complaint fails to allege "any unconstitutional policy or procedure of the LPSO."[32] Francis contends he has adequately pleaded a claim of municipal liability.[33] Francis's claim against the LPSO under § 1983 states as follows:

> The Lafayette Parish Sheriff's Office was negligent and/or otherwise at fault in the following respects:
>
> A. Failing to properly train its officers regarding the use of excessive force;
>
> B. Failing to properly supervise and discipline its officers with respect to their use of excessive force;
>
> C. Adopting official policies, practices, and customs that provided for the failure to properly train and supervise its officers.[34]

It is well-established that a municipality may not be held liable under § 1983 on a theory of *respondeat superior*.[35] Rather, a municipality will be liable only when the municipality itself

---

[29] *Twombly* at 555.
[30] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).
[31] *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994); *see also Test Masters Educational Services, Inc. v. Singh*, 428 F.3d 559, 570 n.2 (5th Cir. 2005).
[32] ECF No. 15-2 at 2.
[33] ECF No. 23 at 6-8.
[34] ECF No. 6 at 44, ¶ 14.
[35] *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694 (1978); *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009).

causes the constitutional violation through the execution of its policies or customs.[36] To establish municipal liability under § 1983, a plaintiff must first identify either an official policy promulgated by a municipal policy maker, or a custom so widespread and common that it fairly represents municipal policy. The plaintiff must then show that the policy or custom was the moving force behind the violation of plaintiff's constitutional right.[37] "To proceed beyond the pleading stage, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation cannot be conclusory; it must contain specific facts.'"[38] Here, Francis fails to identify in his complaint (or in his opposition memorandum) any policy or custom adopted by the LPSO that led to the alleged use of excessive force against him. Nor has Francis pleaded (or even argued) any facts showing a causal relationship between any policy or custom adopted by the LPSO and the alleged constitutional violation. As such, Francis has failed to state a claim for liability based on policy or custom.[39]

Francis additionally alleges that the LPSO failed to properly train, supervise, and discipline its employees with respect to the use of excessive force. A claim asserting a municipality failed to train, supervise or discipline its employees is a type of *Monell* claim.[40] To establish such a claim,

---

[36] *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989); *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (under § 1983, "local governments are responsible only for their *own* illegal acts") (internal quotation marks omitted); *Peterson* at 847 (a municipality "is liable only for acts directly attributable to it 'through some official action or imprimatur'") (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).
[37] *Hutcheson v. Dallas County, Texas*, 994 F.3d 477, 482 (5th Cir. 2021) (quoting *Pineda v. City of Hous.*, 291 F.3d 325, 328 (5th Cir. 2002)); *Henderson v. Harris County, Texas*, 51 F.4th 125, 130 (5th Cir. 2022); *Piotrowski*, 237 F.3d at 578-79.
[38] *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (alteration omitted) (quoting *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997)).
[39] *See e.g. Peña* at 622 ("To proceed beyond the pleading state, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts.'") (quoting *Spiller* at 167); *Verastique v. City of Dallas, Texas*, 106 F.4th 427, 431 (5th Cir. 2024) (The complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face; legal conclusions, mere labels, threadbare recitals of the elements of the claim, conclusory statements, and naked assertions devoid of factual enhancement will not suffice).
[40] *Henderson*, 51 F.4th at 130; *Verastique*, 106 F.4th at 432.

a plaintiff show: (1) the municipality failed to train, supervise or discipline the officers involved; (2) there is a causal connection between the alleged failure to supervise, train or discipline and the alleged violation of constitutional rights; and (3) the failure to train, supervise or discipline constituted deliberate indifference to the plaintiff's constitutional rights.[41] To show deliberate indifference, a plaintiff ordinarily must show a "pattern of similar constitutional violations by untrained employees."[42] However, in a very narrow range of circumstances, a plaintiff can establish deliberate indifference through the "single-incident exception."[43] "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."[44] Here, Francis's complaint is wholly devoid of any factual allegations indicating that the LPSO failed to train, supervise or discipline its employees with respect to the use of excessive force, that there is a causal connection between such failures and the officers' alleged use of excessive force, or that the LPSO's failures constitute deliberate indifference to Francis's constitutional right to be free of excessive force.[45] Accordingly, Francis has failed to state a claim on this theory of municipal liability. In sum, because Francis has not alleged an official policy promulgated by the LPSO caused the deprivation of his constitutional rights, nor pleaded factual

---

[41] *Hutcheson*, 994 F.3d at 482; *Verastique* at 432.
[42] *Connick*, 563 U.S. at 62.
[43] *Henderson* at 131; *see also Hutcheson* at 482-83 (The single-incident exception is generally reserved for situations in which there is no training whatsoever; it requires proving that a "highly predictable consequence" of the lack of training would be the specific constitutional injury sued upon); *see also Connick* at 63.
[44] *Connick*, 563 U.S. at 61 (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985)); *see also Connick* at 70 ("[P]roving that a municipality itself actually caused a constitutional violation by failing to train the offending employee presents 'difficult problems of proof,' and we must adhere to a 'stringent standard of fault,' lest municipal liability under § 1983 collapse into *respondeat superior*.") (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 407, 410 (1997)).
[45] *See e.g. Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face"); *Iqbal*, 556 U.S. at 678 (the plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"); *Hutcheson*, 994 F.3d at 483.

allegations supporting a failure-to-train theory of municipal liability, Francis's § 1983 claims against the LPSO will be dismissed with prejudice.

**B.      Plaintiff's § 1983 Claim of Excessive Force.**

The Court finds Francis's claim of excessive force against the fictitious officers should be dismissed for failure to prosecute. In the Fifth Circuit, "the mere naming of a person through use of a fictitious name does not make that person a party absent voluntary appearance or proper service of process."[46] Here, Officers A, B and C have neither been served with process, nor have they made an appearance. Because Francis has never amended his Complaint to properly name the defendant officers, and because the LPSO does not represent the unidentified officers, they are not parties to this suit.[47] Further, while Francis has not sought leave to amend his pleadings to properly name the officers, even were the Court to grant leave *sua sponte*, amendment here would be futile. The statute of limitations on this claim expired almost two years ago, and any amendment to substitute named officials for the fictitious defendants would not relate back under Fed. R. Civ. P. 15(c).[48] Accordingly, Francis's claim of excessive force against the fictitious officer-defendants is dismissed with prejudice.[49]

**C.      Remaining State Law Claims**

Having granted summary judgment in Defendant's favor on all of Francis's federal claims, only Francis's state law claims remain for resolution. A district court may decline to exercise

---

[46] *Nagle v. Lee*, 807 F.2d 435, 440 (5th Cir. 1987).
[47] *See* ECF No. 7 at 1, § 1; ECF No. 13 at 2, no. 5. The Court notes that in the parties' Rule 26(f) report, filed on December 8, 2023, counsel for Francis stated he "anticipates amending the Petition for Damages herein to name the officers involved in the alleged incident," but he has not done so as of this date. ECF No. 13 at 4. The deadline for joinder of parties and amendment of pleadings passed on June 21, 2024. ECF No. 12 at 1.
[48] *See e.g. Winzer v. Kaufman County*, 916 F.3d 464, 470-71 (5th Cir. 2019); *Jacobsen v. Osborne*, 133 F.3d 315, 320-21 (5th Cir. 1998).
[49] Fed. R. Civ. P. 41(b); *see also Colle v. Brazos Cnty., Tex.*, 981 F.2d 237, 242-43 (5th Cir. 1993).

supplemental jurisdiction over state law claims if all claims over which it had original jurisdiction have been dismissed.[50] The general rule in this Circuit is that district courts should decline to exercise supplemental jurisdiction over state law claims in such circumstances.[51] After an examination of the statutory and common law factors, the Court finds no reason to depart from the general rule here.[52] Accordingly, the Court declines to exercise supplemental jurisdiction over the remaining state law claims, and those claims will be remanded to state court.

## IV.
### CONCLUSION

For the reasons set forth in this Ruling, the Motion for Judgment on the Pleadings, or alternatively for Summary Judgment [ECF No. 15], filed by Defendant, Sheriff Mark Garber as Sheriff of the Lafayette Parish Sheriff's Office ("LPSO"), is GRANTED IN PART. Plaintiff's § 1983 claims asserted against the Lafayette Parish Sheriff's Office and the fictitious officer-defendants are DISMISSED WITH PREJUDICE, and his remaining state law claims are REMANDED to state court.

THUS DONE in Chambers on this 29th day of July, 2024.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT COURT

---

[50] 28 U.S.C. § 1367(c)(3).
[51] See e.g. Enochs v. Lampasas County, 641 F.3d 155, 161, 163 (5th Cir. 2011); Brookshire Bros. Holding, Inc. v. Dayco Products, Inc., 554 F.3d 595, 602 (5th Cir. 2009).
[52] See 28 U.S.C. § 1367(c); Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 (1988); Enochs at 161.